# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# ALEXANDRIA DIVISION

| | |
|---|---|
| **RONNIE HARDY, ET AL.** | **CIVIL ACTION NO. 02–CV-1520-A** |
| -vs- | |
| **RANDALL DUCOTE, ET. AL.** | **JUDGE LITTLE** |

## MEMORANDUM RULING

Before the court is the Motion for Summary Judgment filed by Defendant, Century Surety Insurance Co. ("Century"). Inexplicably, Century's motion requests that the court grant it summary judgment on an action for a declaratory judgment that it has not filed. In its Memorandum in Support of Motion for Summary Judgment ("Memorandum"), however, Century requests summary judgment on the claims against it by Plaintiffs, Ronnie Hardy ("Hardy") and Chad Gauthier ("Gauthier"), and by Third-Party Plaintiff, X L Insurance America, Inc. ( formerly known as Winterthur International America Insurance Co.) ("Winterthur"). The court, therefore, will interpret Century's motion as one for summary judgment on those claims and will proceed on that basis.

## Factual and Procedural Background

Exide Technologies, Inc. ("Exide") contracted with Randal Ducote, d/b/a Ducote Wrecking & Demolition Co. ("Ducote"), for the performance of construction and maintenance at one of Exide's battery recycling plants. In connection with that contract, Exide and Ducote executed a Hold

Harmless and Indemnity Agreement whereby Ducote agreed to assume any liability that Exide may incur arising from Ducote's work at the Exide facility and to insure Exide "with respect to any liability with [sic] may accrue . . . as a result of exposure to, or other handling of, hazardous materials or other materials on or off the Site in connection with this contract."

Gauthier and Hardy were employees of Ducote's who participated in Ducote's work at the battery recycling plant owned and operated by Exide. They allege that while working at that plant, they were injured by exposure to "lead, acid and/or other heavy metals and toxic substances." Neither Ducote nor Exide, however, may be sued by Plaintiffs. Ducote is immune from liability in this action because "[t]he Louisiana Workers Compensation Act provides that workers compensation is the exclusive remedy of an employee against his employer for an injury or a compensable sickness or disease." See LA. REV. STAT. ANN. § 22:1032 (West 2005). Exide, on the other hand, is not immune from liability under the Louisiana Workers Compensation Act, as the court explained in its Memorandum Ruling of 18 March 2005; but, it is unamenable to suit because it is bankrupt. See LA. REV. STAT. ANN. § 22:655 (West 2005). Plaintiffs, therefore, seek redress for their alleged damages from Winterthur pursuant to the Louisiana Direct Action Statue. Id.

Winterthur, as Exide's subrogee, filed a third-party complaint against Ducote, Century, and Evanston Insurance Co. ("Evanston"). Winterthur's cause of action against Ducote is based on Ducote's promise to indemnify and provide insurance for Exide. Winterthur's asserted causes of action against Century and Evanston, Ducote's liability insurers, are brought pursuant to the Louisiana Direct Action Statue and are premised upon two claims. First, Winterthur claims that, pursuant to its obligations under the Hold Harmless and Indemnity Agreement, Ducote made Exide

an additional insured under its insurance policies with Century and Evanston. Accordingly, as Exide's subrogee, Winterthur seeks to enforce Exide's rights as an insured under those policies. Second, Winterthur claims that the Century and Evanston Policies provide coverage to Ducote for any liability it may have to Winterthur under the indemnity provisions of the Hold Harmless and Indemnity Agreement, and therefore, Winterthur is entitled to bring a direct action against Century and Evanston pursuant to the Louisiana Direct Action Statue because their policies provide coverage to Ducote for any contractual liability he may have to Winterthur in this case.

After Winterthur filed its third-party complaint, Plaintiffs' amended their complaint to assert a direct cause of action against Century and Evanston, alleging that Exide is an additional insured under their respective policies. Evanston then moved for dismissal or summary judgment upon Winterthur's claims against it. The court found that Exide was an additional insured under Evanston's policy and that the policy provided coverage for Ducote's liability pursuant to the Hold Harmless and Indemnity Agreement. The same claims are made against Century, who now moves for summary judgment, claiming that the terms of its policy exclude coverage of these claims.

**Applicable Legal Standards**

Century asserts that it is entitled to summary judgment pursuant to the terms of the insurance policy by which it provided general liability coverage to Ducote, the employer of Hardy and Gauthier. "An unambiguous contract is interpreted as a matter of law." First Nat'l Bank of Jackson v. Pursue Energy Corp., 799 F.2d 149, 151 (5th Cir. 1986). "A district court may grant summary judgment when a contract is unambiguous . . . . and [its] determination that a contract is

3

unambiguous is a conclusion of law." Id. Under FED. R. CIV. P. 56, summary judgment may be granted to the moving party only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, when viewed in the light most favorable to the non-moving party, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50 (1986). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party. Anderson, 477 U.S. at 248. In making this determination, a court must draw all justifiable inferences in favor of the non-moving party. Id. at 255. Once the moving party has shown "that there is an absence of evidence to support the non-moving party's case," the non-moving party must come forward with "specific facts" showing a genuine factual issue for trial. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). Conclusory denials, improbable inferences, and legalistic argumentation are not an adequate substitute for specific facts showing that there is a genuine issue for trial. S.E.C. v. Recile, 10 F.3d 1093, 1097 (5th Cir. 1993).

## Discussion

Century contends that all causes of action against it should be denied as a matter of law because the policies by which it insured Ducote, Commercial Lines Policies Nos. CCP-207264 and CCP-188630 ("Century Policies"), do not provide coverage for liability resulting from exposure to lead. It claims that, under the terms of its policies, it has neither a duty to defend nor to indemnify

any party to this suit. For the following reasons, Century's motion is denied.

As mentioned above, two causes of action have been asserted against Century. First, premised upon the contention that Exide is an additional insured under the Century Policies, Winterthur, as Exide's subrogee, asserts that the Century Policies provide coverage for the claims against it. Under this theory, Plaintiffs also seek redress directly from Century for Exide's alleged negligence pursuant to the Louisiana Direct Action Statute. Assuming for the sake of argument that Exide is an additional insured under the Century Policies, those policies would clearly exclude any liability that Exide may have to Plaintiffs for exposure to lead. The Century Policies unambiguously exclude coverage for "'bodily injury' or 'property damage' resulting from the disposal, existence, ingestion, inhalation, installation or removal of lead . . . ." As a matter of law, therefore, neither Plaintiffs nor Winterthur may recover from Century for any damages paid for injuries caused by lead based on the theory that the Centuries Policies provide coverage to Exide for such liability.

Winterthur, however, also contends that because Ducote is contractually obligated to reimburse it for any monies it pays on behalf of Exide, Century, as Ducote's insurer, must indemnify it for at least some portion of those payments. Although the Century Policies generally exclude coverage for contractual liability, that exclusion clearly states that coverage is provided for liability for "bodily injury" that has been "[a]ssumed in a contract or agreement that is an 'insured contract.'"[1] An "insured contract," among other things, includes an "agreement pertaining to your business . . . under which you assume the tort liability of another party to pay for 'bodily injury' . . ."[2] Some

---

[1] Century Policies § 1(A)(2)(b)(2)(b).

[2] Century Policies § V(8)(f).

coverage of Ducote's liability under the Hold Harmless and Indemnity Agreement is, therefore, provided by the Century Policies. The contentious issue, however, is whether the lead exclusion clause excludes coverage for the alleged contractual liability.

Evanston presents two arguments as to why the lead exclusions should be deemed inapplicable to Ducote's contractual liability. Evanston first asserts that because the [contractual liability provision] is more specific that the general 'lead exclusion' . . . Louisiana law mandates that coverage be afforded." See Aikman v. Thomas, 2003-2241 , *6, 887 So.2d 86, 90, (La. App. 1 Cir. 9/17/04) (stating that "in the interpretation of statutes and contracts, the specific controls the general"). Evanston, however, equivocates between two meanings of the term "specific." While it is true that the contractual liability provision "sets forth several, specific qualifications and limitations to the 'insured contract' coverage," whereas the lead exclusion clause is more general in nature, it is not with the specificity of a clause itself that the court should be. The contractual liability clause uses the general term "bodily injury." The lead exclusion clause, however, further specifies what constitutes a covered bodily injury. Aikman, 887 So.2d at 90 (stating that a "policy should be construed as a whole and one portion thereof should not be construed separately at the expense of disregarding another"). Therefore, the general maximum that in the interpretation of statutes and contracts that "the specific controls the general" does not support the conclusion for which Evanston argues.

Second, Evanston argues that, under Louisiana law, the court should find in favor of coverage because the contractual liability and lead exclusion clauses are incongruous and this creates an ambiguity in the policy. Evanston contends that " where an accident is covered by one clause in an

6

insurance policy, but it is excluded by another clause of the same policy, the clause providing coverage must prevail." Lee v. Liberty Mut. Ins. 387 So. 2d 621, 623 (La. App. 4th Cir. 1980). The decision in Lee, however, does not support Evanston's argument. Evanston's conclusion that the contractual liability clause in the Century Policies provides coverage begs the question. As mentioned above, the contractual liability clause provides coverage for liability due to" bodily injury," but what constitutes covered "bodily injury" is narrowed by the lead exclusion clause. The contractual liability clause, therefore, does not does not, as a matter of law, provide coverage for liability based on the exposure to lead.

While the lead exclusion clause may prohibit coverage under each of the theories of liability asserted against Century, there are genuine issues of material fact regarding the cause of any injuries Plaintiffs may have suffered. This precludes the court's granting Century's motion.

Gauthier and Hardy allege that they were injured by exposure to "lead, acid and/or other heavy metals and toxic substances." Among these various substances, only damages caused by exposure to lead are excluded by the Century Policies. Plaintiffs might establish that they were harmed by exposure to various deleterious substances, but be unable to isolate which substances caused which injuries. Century, as the insurance carrier, shoulders the burden of proving that the coverage exclusion is applicable. Doerr v. Mobil Oil Corp., 00-0947, *5, 774 So. 2d 119, 124 (La. 12/19/2000) (holding that he insurer to each of the causes of action stated).

There are also genuine issues of material fact concerning Century's claim that it does not have a duty to defend Exide. An insurer's duty to defend a suit is determined solely by reference to the pleadings filed in that suit. Gregory v. Tenn. Gas Pipeline Co., 948 F.2d 203, 205 (5th Cir. 1991). "An insurer owes a duty to defend unless the claims made against the insured are clearly excluded from coverage. If only one claim falls within the duty to defend then the insurer must

7

defend the entire case and the court should liberally construe the complaints to determine whether any one claim triggers the duty to defend." Id. Because only the claims for lead exposure are excluded from coverage under the Century Policies, it may be the case that Century has a duty to defend Exide. The Century policies, however, require, as a prerequisite to defending an insured, that certain notice procedures be met. There is nothing in the record from which the court can determine whether these prerequisites have been satisfied.

Century's Motion for Summary Judgment, therefore, is DENIED because there are genuine issues of material fact yet to be resolved.

Alexandria, Louisiana

21 July 2005

_____
F. A. LITTLE, JR.
UNITED STATES DISTRICT JUDGE