U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED

MAY - 9 2007

ROBERT H. SHEMWELL, CLERK
BY _____
    DEPUTY

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | |
|---|---|
| RONNIE HARDY, ET AL. | CIVIL ACTION NO. 02-1520-A (LEAD) |
| -vs- | JUDGE DRELL |
| RANDALL DUCOTE, ET AL. | MAGISTRATE JUDGE KIRK |

– consolidated with –

| | |
|---|---|
| RANDALL JUNEAU | CIVIL ACTION NO. 04-0789-A (MEMBER) |
| -vs- | JUDGE DRELL |
| RANDALL DUCOTE, ET AL. | MAGISTRATE JUDGE KIRK |

# R U L I N G

Before the Court are numerous potentially dispositive motions. (Documents numbered 249, 257, 273, 276, 277, 280, and 288 in Civil Action No. 02-1520, hereinafter "Hardy"; and documents numbered 131, 135, 137, and 185 in Civil Action No. 04-0789, hereinafter "Juneau".)[1] Oral argument was held on April 18, 2007.

## BACKGROUND

Plaintiffs in these consolidated suits were Ronnie Hardy, Chad Gauthier, and Randall Juneau. The men alleged that in 2001, while they were working at

---

[1] These cases were consolidated by Order dated May 31, 2006, but documents filed before that date continue to bear the docket number assigned prior to the consolidation.

the East Baton Rouge Parish battery recycling plant owned and operated by Exide Technologies, Inc., f/k/a Exide Corporation (hereinafter "Exide"), they were injured through exposure to acid, lead, and other toxic substances.[2] Although Plaintiffs were temporarily stationed at the Exide facility, they were not employees of Exide. Rather, they had been hired by Randall Ducote (d/b/a Ducote Wrecking & Demolition Company) (hereinafter "Ducote"), with whom Exide had contracted for the performance of certain construction and maintenance. In May 2006, following successful settlement negotiations, Plaintiffs dismissed all their claims. However, any third party demands and/or cross claims remained. (Hardy Document No. 266 ; Juneau Document No. 195.)[3] Those surviving issues constitute the bases for the multiple motions before this Court.

## DISCUSSION

If I go to a New Orleans restaurant, I often have the choice among many different menu items. Some are as simple as a solid trout almondine. Others are far more eclectic and include mixed combinations of international ingredients, some of which require clear explanation from the waiter. Learned counsel on all

---

[2] On April 15, 2002, Exide filed a petition for relief under Chapter 11 of the Bankruptcy Code in the matter bearing Docket No. 02-11125 in the United States Bankruptcy Court for the District of Delaware. (Hardy Document No. 32.)

[3] Mr. Juneau's claims against Mike Ashford were not specifically mentioned in conjunction with the May 31, 2006 Order. (Juneau Document No. 195.) However, it is clear from a review of the record that those claims were dismissed to the extent, if any, they had not previously been handled through this Court's Ruling on Plaintiff's Motion to Remand. (Juneau Document No. 172.) Thus, Mr. Ashford's Cross Claim/Third Party Complaint (Juneau Document No. 67) is no longer pending.

2

sides of this case have presented such a menu for the Court. Some argue that the case is simple. Some argue that it is far more complex. This second group suggests that we have the capacity to see inside the hearts of the litigants they oppose. Let us explain.

We begin with two premises. One of those is that a number of the pending issues were considered by our colleague, Judge F. A. Little, Jr. in the Hardy litigation, before the two cases were consolidated. (See Hardy Document Nos. 143, 196, 209, and 230.)[4] The second is that our decision does not warrant nor require a stretching of the basic laws of insurance coverage, policy interpretation, application of the Direct Action Statute, or subrogation. All counsel agree generally on these principles. XL Insurance America, Inc., formerly known as Winterthur International America Insurance Company (hereinafter "XL")[5] argues the simple approach in the application of the legal concepts. Evanston Insurance Company (hereinafter "Evanston")[6] and those aligned with its position, argue that the law is simply understood, but that the approach we should take is not so

---

[4]For purposes of judicial efficiency, Judge Little's rulings will not be repeated here. Rather, their contents, including, but not limited to the standards applicable when deciding motions to dismiss/motions for summary judgment, are incorporated herein by reference.

[5]XL insured Exide through a Commercial Lines Policy bearing Policy Number GL 003-09-34-01 issued by Winterthur International America Insurance Company.

[6]Evanston provided a Commercial Umbrella Policy bearing Policy Number CUBW487600 to "Ducote's Wrecking."

3

straightforward. Rather, it requires that we go beyond the plain wording of the statutes and documents to reach the result they contemplate.

The reality of any insurance litigation under the Louisiana Direct Action Statute (La. R.S. 22:655) is that an insurer, as a matter of law, is forced to the forefront and is required to respond or be defaulted. XL was placed in this position in both the Hardy and the Juneau suits. Its opponents argue that XL's appearance and activity were solely for its own protection. Whereas that argument may have been a potentially sound one at the front end of this case, Judge Little eruditely handled the issue in his March 18, 2005 opinion (Hardy Document No. 196) when he observed that under the duties XL was required to observe pursuant to the Direct Action Statute, the insurer was acting for and on behalf of Exide in defending against the litigation. It is of no moment that representing Exide's interest in these cases happened to inure to XL's own benefit. It is axiomatic that insurance companies, by nature, owe certain duties to the insured. Among those are the duty to defend, which is, jurisprudentially speaking, much broader than the obligation to pay.[7]

Under the facts of this case, had XL simply reared back on its haunches and said it had no obligations whatsoever to its insured, the result could have been quite catastrophic. Most notably, there would have been no reins placed upon the potential quantum, because the plaintiffs would have had the unfettered

---

[7] See Meloy v. Conoco, Inc., 504 So.2d 833, 838 (La. 1987).

4

opportunity to develop an undefended case. This was particularly important, because at the time the defense activity was originally undertaken by XL, neither Century Surety Company (hereinafter "Century")[8] nor Evanston had been made a party to the litigation. (Hardy Document No. 1.) It is difficult to understand how Century and Evanston can claim that XL was acting only for its own self-protection when XL was able to defeat the attempted class action and ultimately helped participate in driving down the litigation value of Plaintiff's claims to the point of settlement by all Defendants, including Century and Evanston. Put another way, there was no entity other than XL to step forward. Had it not done so, it could well have been subject to suit for arbitrary and capricious handling of the underlying litigation.[9]

Having determined that XL had these obligations, we are compelled to find that payments which it made in this case for defense and indemnity cannot be considered "voluntary" in any normal sense of the word.[10] In this case, XL made no voluntary payments. It did not give money away to anyone. It was under the compulsion of adversarial and extensive litigation. While a settlement is a

---

[8]Century provided a Commercial Lines Policy bearing Policy Number CCP-188630 to "Ducote's Wrecking," and a Commercial Lines Policy bearing Policy Number CCP-207264 to "Ducote's Wrecking, an Individual."

[9]See Riley Stoker Corporation v. Fidelity & Guaranty Ins. Underwriters, Inc., 26 F.3d 581, 590 (5th Cir. 1994).

[10]The Oxford English Dictionary (2d ed. 1989) defines "voluntary" actions as those "[p]erformed or done of one's own free will, impulse, or choice; not constrained, prompted, or suggested by another."

5

voluntary kind of thing, the payment in settlement does not translate into a proved affirmative defense to a subrogation claim.

With regard to whether XL was actually subrogated under the facts of this case, again, Judge Little properly found that because XL was acting in Exide's interest, payment by XL would result in conventional and legal subrogation. (Hardy Document Nos. 143 and 196.)[11]

Evanston argues Louisiana Civil Code article 2046 provides the words of a contract should be interpreted as a matter of law when those words are clear and unambiguous. XL points out there is a second clause in article 2046 which also applies, and that is that when the result leads to absurd consequences, the court may look outside the language of the policy for the intent of the parties. This is where it is made clear the simpler application of the law requires a result in favor of XL on the pending motions. To succumb to the arguments advanced in opposition to XL's position would result in the absurdity that every case of subrogation based upon payment in any insurance policy would be subject to potentially expensive and extensive litigation forcing a court to gaze into a crystal ball and/or have a trial on the merits to determine what specific basis or bases prevailed causing a particular insurance company to settle a particular case in a

---

[11]As discussed during oral argument, the Court agrees with the contention that the term "law of the case" is not specifically applicable in a district court setting under the present circumstances. The proper consideration, rather, falls under Fed. R. Civ. P. 60. The issues before us concerning XL's rights are essentially the same as those decided by Judge Little in his several rulings, as listed above. The main difference, of course, is that settlement of the underlying claims has now actually occurred.

6

particular set of circumstances. We do not believe that the duties imposed upon insurers by literally hundreds of Louisiana cases either require or even allow for the court to go beyond every settlement to determine which thing was most important in the insurer's mind when it chose to conclude the claim on behalf of its insured. Neither does Louisiana's public policy contemplate such an obligation on the part of the judiciary. The foregoing, then, disposes of the contrary arguments of Century, Evanston, and Ducote.

Deciding XL is entitled to subrogation to the extent of its payment of defense and indemnity, we now must look to determine whether there is any recompense to be had. This requires an analysis of the coverage issues under Century's and Evanston's insurance policies. As previously mentioned, Century was the comprehensive general liability carrier and Evanston was the commercial umbrella carrier for Ducote. The threshold questions regarding whether Century and/or Evanston owe indemnification to XL spin off of Exide's status as an additional insured or the extent to which the Century/Evanston policies accept responsibility for the written indemnification agreement between Ducote and Exide. Under that agreement, Ducote agreed to reimburse Exide "from and against any and all liability, claims, actions, suits, losses, costs, expenses (including without limitation attorney's fees), fines and/or penalties . . ." related to incidents such as that which forms the basis of the underlying litigation.[12]

---

[12] See Hold Harmless and Indemnity Agreement executed September 15, 2000.

Notably, the Century and Evanston insurance policies contain the very usual language commonly called "contractual indemnity coverage." Specifically, the policies apply to any liability for bodily or personal injury the insured has assumed in an "insured contract."[13] An "insured contract" is defined as any contract or agreement pertaining to the business of the insured under which the insured assumes the tort liability of another party to pay for bodily or personal injury to a third person.[14] Applying that language to this case, Century and Evanston argue that there is no one to reimburse, because the obligations under the indemnification agreement only flowed to Exide. Therefore, it follows, according to them, that the subrogated relationship or the relationship of XL as assignee of Exide does not exist. That matter was also previously resolved by Judge Little. There is both a subrogation and, according to XL's policy, an assignment of Exide's rights to recover these amounts. Therefore, we reiterate that, absent some other Century/Evanston policy provision or consideration, XL would stand in the shoes of Exide in terms of the indemnification agreement with Ducote.

Having determined that there is an entitlement on behalf of XL to recover against the Century/Evanston contracts (subject to other policy exclusions), we need not decide specifically whether Exide's status as an "additional named

---

[13]Century policies, Section I(A)(2)(b); Evanston policy, Section 1(A)(2)(c).

[14]Century policies, Section V; Evanston policy, Section VI.

insured" could be read into the policy by implication arising out of acceptance of the risk by Century/Evanston under the Ducote indemnity agreement. The first determination is sufficient. Nor need we quantify any liability against Ducote at this time; the Court is informed that the Century/Evanston limits would likely be sufficient to cover any of XL's claims in this case.

We now must turn to the matter of specific policy exclusions in the Century and Evanston policies. At issue first is the "employee exclusion" in the Century policies, which precludes coverage for injury to an employee of any insured arising out of and in the course of employment by any insured or the performance of duties related to the conduct of the insured's business.[15] The jurisprudence explains this language is generally interpreted broadly to exclude any injury suffered by an employee in the course of his employment. See Davis v. Oilfield Scrap & Equip. Co., Inc., et al., 503 So.2d 674, 676 (La. App. 3d Cir. 1987). Thus, this exclusion would apply to a suit by Ducote's employees against Ducote, and it could also apply to a suit against Exide by the if employees if Exide were a statutory employer in this case. As Judge Little previously determined, very correctly so, the law of Louisiana requires a written contract whereby the entity claimed statutory employer status. No such writing existed in this case.

---

[15]Century policies, I(A)(2)(e).

Therefore, the employee exclusion could not apply to a suit against Exide in general.[14]

The remaining question, then, is whether Century may claim applicability of the employee exclusion to an insured contract. Under Louisiana law, exclusions in insurance policies are strictly construed, and any ambiguities are to be construed in favor of the insured to effect, not deny coverage. Breland v. Schilling, 550 So.2d 609, 610 (La. 1989). We do not believe the employee exclusion is made clear such that it applies to the contractual indemnity clause in the Century policy. Contractual indemnification coverage is a specific kind of coverage designed to insure a risk that otherwise would be excluded. If we were to apply the employee exclusion over and against contractual indemnity coverage, this would effectively negate the precise coverage provided by the contractual indemnity provision. So, why would parties consider adding such coverage to any insurance contract? Counsel can point to no authority for the notion that the employee exclusion is broad enough to supercede coverage designed to insure over the very risk that is excluded.[15]

Turning to the lead exclusion, we agree with Judge Little's analysis on this point. Genuine issues of material fact continue to exist concerning the

---

[14] Hardy Document No. 196.

[15] This issue is not raised by the Evanston policy, because the employee exclusion in that policy specifically exempts liability under an "insured contract." See Evanston policy, I(A)(2)(e).

10

parameters of the applicability of this exclusion to overall recovery and its relationship to the duty to defend owed by Ducote's insurers.[16]

The remaining issues before the Court concern the potential liability of M&C Insurance, Inc. d/b/a 1st Insurance Marksville (hereinafter "M&C") and Michael Desoto (hereinafter "Desoto"). The record is clear that XL and Ducote did not assert their claims against M&C and/or Desoto until July 2004, at the earliest.[17] Likewise, there is no dispute that the Century and Evanston policies were issued in 2000. La. R.S. 9:5606 provides a three-year peremptive period regarding actions for damages related to professional insurance agent liability. The only statutory exception to the three-year peremptive period is a claim of fraud. No such allegation is made in this case. Any arguments that the peremptive period was somehow suspended under a continuing tort theory are not persuasive, because, under Louisiana law, "the principle of continuing torts is a suspensive principle, ineffective against the effects of peremption . . . ." Bel v. State Farm Mutual Automobile Insurance Company, 2002-1292 (La. App. 1st Cir. 2/14/03), 845 So.2d 377, 382. Thus, the claims against M&C and Desoto are untimely and must be dismissed.

---

[16]Hardy Document No. 230.

[17]Hardy Document Nos. 105 and 152; Juneau Document Nos. 59, 64, and 69.

11

## CONCLUSION

For the reasons set forth above, the motions for summary judgment filed by Evanston Insurance Company are DENIED (Document Nos. 249 and 273); the motions for summary judgment filed by Century Surety Company are DENIED (Document No. 257 in Docket No. 02-1520 and Document No. 185 in Docket No. 04-0789); the motion for partial summary judgment filed by Randall Ducote, individually and d/b/a Ducote Wrecking Company is DENIED (Document No. 276); the motions for summary judgment and partial summary judgment filed by XL Insurance America, Inc., formerly known as Winterthur International America Insurance Company are GRANTED regarding entitlement to reimbursement in an amount yet to be proved (Document Nos. 277 and 280 in Docket No. 02-1520 and Document Nos. 135 and 137 in Docket No. 04-0789); the motions for summary judgment filed by M&C Insurance, Inc. d/b/a 1st Insurance Marksville and Michael Desoto are GRANTED (Document No. 288 in 02-1520 and Document No. 131 in Docket No. 04-0789); and all claims against M&C Insurance, Inc. d/b/a 1st Insurance Marksville and Michael Desoto are DISMISSED WITH PREJUDICE. All issues regarding amounts of reimbursement and the applicability of the lead exclusion are reserved to trial on the merits.

SIGNED on this 4th day of May, 2007, at Alexandria, Louisiana.

DEE D. DRELL
UNITED STATES DISTRICT JUDGE